JUSTICE GRAY,
concurring and dissenting.
I concur in the Court’s opinion on issues two and five and in parts of that opinion on issues one and three. I respectfully dissent from portions of the Court’s opinion on issues one and three and from the entirety of that opinion on issue four.
Issue one is whether the District Court erred in denying petitioner the opportunity to amend his petition for postconviction relief. With regard to the proposed amendments relating to ineffective assistance of counsel, newly discovered evidence, Brady violations and cumulative denial of due process, I agree with the Court that the amendments were not futile and that the District Court abused its discretion in determining otherwise.
I disagree with the Court’s determination that the proposed amendment to claim 11 to refer to § 45-2-302(1), MCA, should have been allowed. First of all, it is undisputed that petitioner was not charged under this particular subsection of the “legal accountability” statute which requires that the mental state necessary for the under *426 lying offense must be “shared” by the person the State seeks to hold legally accountable for the acts. Subsection (3) of § 45-2-302, MCA, which is applicable in this case, requires only that
either before or during the commission of an offense with the purpose to promote or aid such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense.
Moreover, this § 45-2-302(1), MCA, issue — which by the Court’s own characterization relates to the existence or lack thereof of a statutory aggravating circumstance and not to proportionality — could have been raised in petitioner’s direct appeal and was not. On that basis, the issue is procedurally barred under § 46-21-105(2), MCA, and Lester Kills on Top, 901 P.2d at 1386-87. For these reasons, it is my view that the District Court did not abuse its discretion in rejecting the proposed amendment to claim 11 on the basis that it was futile. The remainder of my disagreement with the Court over this particular proposed amendment relates to my strenuous disagreement regarding issue four, the proportionality issue, which is discussed below.
With regard to issue one, I also am concerned with the Court’s sweeping suggestion that any and all motions to amend a petition for postconviction relief — at least in a death penalty case — must be granted. It is my view that neither the law nor “justice” supports such a theory.
Nor do I see the relevance of the Court’s observation that “no prejudice to the State was established which would justify” denial of petitioner’s motion to amend his petition for postconviction relief. The Court cites to no authority under which the State must establish prejudice regarding a proposed amendment prior to such time as the proposing party establishes that justice requires that the motion be granted, and I know of none.
My final observation with regard to the Court’s discussion of issue one relates to the 1995 amendments to § 46-21-105, MCA, which are not applicable to the case presently before us. As amended, § 46-21-105(1), MCA, expressly provides that a petition for postconviction relief “may be amended only once.” Presumably the Court will apply that limitation, pursuant to the clear intent of the legislature, in future postconviction proceedings to which it applies, absent a successful constitutional challenge. I fear, however, that the Court’s sweeping suggestion in this case — that any and all motions to amend a petition for postconviction relief in a death penalty case must be *427 granted — will prove a significant stumbling block to anyone attempting to argue that this Court must follow the law duly enacted by the legislature in § 46-21-105(1), MCA (1995).
Issue three is whether the District Court erred in concluding that certain of the petitioner’s claims were barred by the doctrine of res judicata. The Court holds that, except as to the claims which raise proportionality arguments pursuant to the United States and Montana Constitutions, the District Court did not err in concluding that certain of petitioner’s claims are so barred. I agree with the Court that the specified claims are barred by res judicata.
With specific regard to the proportionality claims, I agree with the Court that the doctrine of res judicata was not enacted into the postconviction relief statutes by the Montana legislature and, therefore, that the doctrine is a judicial creation. I also agree that we have recognized an exception to its applicability where the case already must be remanded for further proceedings because of reversal on an unrelated issue. See Zimmerman, 573 P.2d at 178. This threshold Zimmerman procedural circumstance is present in this case because we have concluded that the Brady violations require that petitioner be resentenced, for the reasons discussed in some detail in petitioner’s brother’s recent postconviction case. See Lester Kills on Top, 901 P.2d at 1375-77.
However, Zimmerman authorizes us to revisit an issue resolved on direct appeal only “to correct a manifest error in [our] former opinion.” Zimmerman, 573 P.2d at 178. Based on Zimmerman, the Cotut refuses to bar petitioner’s proportionality arguments under either the federal or the Montana Constitution and proceeds, in issue four, to address those arguments on the merits under both Constitutions. I disagree that Zimmerman authorizes us to address proportionality under either Constitution.
With regard to the issue of proportionality under the United States Constitution which we addressed and resolved in petitioner’s direct appeal, it is my view that our earlier opinion did not contain manifest error and that the Court’s proportionality analysis in the present case is flawed. Therefore, I would apply the res judicata bar to petitioner’s proportionality argument under the United States Constitution.
Before even beginning its proportionality analyses, the Court “reviews” the evidence which led to petitioner’s conviction for aggravated kidnapping and deliberate homicide and to the imposition by the sentencing court of the death penalty. Its review rather pointedly minimizes the evidence about the extent of petitioner’s participation *428 in the episode which resulted in Etchemendy’s death. Instead, it focuses largely on the testimony of Diane Bull Coming and, in the guise of “reviewing” that testimony, reweighs her testimony and redetermines her credibility. The Court cites to no authority under which it is authorized to do so, and I submit that the sole intent of this “review” is to buttress the conclusion the Court determined in advance to reach. In my opinion, we are bound on these factual matters by the record which supported the jury verdicts and the findings of fact made by the sentencing court and which we reviewed and affirmed on appeal in State v. Kills On Top (1990), 243 Mont. 56, 793 P.2d 1273.
That record indicates that the deliberate homicide was committed by means of torture and that the aggravated kidnapping resulted in the death of the victim; that petitioner was “directly involved in the serious beating of the victim;” that this severe physical brutality engaged in by petitioner was so severe it could have caused death even absent further infliction of physical violence by petitioner’s brother; that after that potentially fatal beating, petitioner participated in placing the nude victim in the trunk of the vehicle and did nothing for him in the subsequent twelve-hour period; and that later, on two occasions, petitioner agreed that the victim had to die. Kills on Top, 793 P.2d at 1300-1308. Indeed, we specifically determined that the sentencing court’s finding that petitioner “agreed that the victim had to die” was supported by the record. Kills on Top, 793 P.2d at 1308. Notwithstanding this record, and our related determinations in petitioner’s direct appeal, the Court resorts to “retrying” these matters here. I cannot join in such a course of action.
The Court then proceeds to its “Federal Proportionality Review.” It sets forth, briefly, the United States Supreme Court’s controlling Enmund and Tison cases, and then presents lengthy criticisms of Tison from law review articles and one court. There appears to be no reason for including this segment, other than the Court’s implicit agreement with the criticisms of Tison advanced by others. The question before us here, however, is not whether we agree with the Supreme Court’s decision in Tison; the issue here is whether this Court erred in applying that decision in petitioner’s direct appeal. Thus, the “criticism” is totally irrelevant to the Court’s purported federal proportionality review in this case.
The Court does finally advance its analysis regarding whether, under federal proportionality standards set forth in Enmund and Tison, this Court’s opinion in petitioner’s direct appeal contained *429 “manifest error” for purposes of applying the Zimmerman exception to the doctrine of res judicata. In one short paragraph, it concludes that our previous analysis under Tison was flawed. That paragraph is followed by another single paragraph asserting that petitioner’s case “presents a situation more similar to the facts of Enmund than the facts of Tison.” I submit that the Court is incorrect in both regards. As a result, it is my view that our opinion on this issue in petitioner’s direct appeal was not manifestly erroneous and does not support refusing to apply res judicata here pursuant to Zimmerman.
Regarding Tison, the facts in that case were as follows. The Tison brothers planned and executed their father’s armed escape from the Arizona State Prison. When a tire blew out on their vehicle after the escape, they decided to flag down a passing motorist and steal a car; they armed themselves and waited at the side of the road. When the Lyons family stopped to render assistance, they were forced into the backseat of the Tison vehicle and driven into the desert, where they were ordered out while the Tisons stole their property and put it into the Tison vehicle. Within the view of the Tison brothers, their father and his co-escapee murdered the Lyons family with the shotguns used in the escape. Neither brother made any effort to help the victims. Tison, 481 U.S. at 139-41, 107 S.Ct. at 1678-80. The brothers subsequently were convicted of armed robbery, kidnaping, car theft and felony-murder. The sentencing court found three statutory aggravating factors and no statutory mitigating factor; it specifically found that the brothers’ participation in the crimes giving rise to the application of the felony-murder rule was “very substantial.” Tison, 481 U.S. at 142, 107 S.Ct. at 1680. On appeal, the Arizona Supreme Court determined that the record established that both brothers were present during the homicides and that the homicides “occurred as part of and in the course of the escape and continuous attempt to prevent recapture.” Tison, 481 U.S. at 143, 107 S.Ct. at 1680. The brothers subsequently challenged their death sentences in postconviction proceedings, which ultimately reached the United States Supreme Court. Tison, 481 U.S. at 143, 145-46, 107 S.Ct. at 1680, 1681-82.
The issue before the Supreme Court was whether the Eighth Amendment permitted imposition of the death penalty for nontriggermen who took no act desired, or substantially certain, to cause death but whose participation in the crimes was major and whose mental state was one of reckless indifference to the value of human life. Tison, 481 U.S. at 152, 107 S.Ct. at 1685. Distinguishing the facts from Enmund, the Supreme Court determined from the record that *430 the petitioners were “actively involved in every element of the kidnaping-robbery and physically present during the entire sequence of criminal activity culminating in the murder of the Lyons family. ...” Tison, 481 U.S. at 158, 107 S.Ct. at 1688. On that basis, the Supreme Court held that “major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the Enmund culpability requirement.” Tison, 481 U.S. at 158, 107 S.Ct. at 1688.
It is clear that the Tison Court premised its holding on the brothers’ major participation in the underlying felonies which gave rise to the felony-murder death sentences, and the reckless indifference to human life shown by that participation and their failure to do anything to prevent the murders. We applied these Tison criteria in Kills On Top and held that the facts of this case were sufficient to satisfy the individual culpability requirement set forth in Enmund. Kills on Top, 793 P.2d at 1306-1308. It is clear that we were correct in doing so; indeed, it is my view that petitioner’s culpability here is greater than that of the Tison brothers.
Petitioner was driving the vehicle at the inception of the lengthy episode which culminated in Etchemendy’s death and, indeed, drove the group out of town for the purpose of “rolling” and stealing from him; petitioner confiscated Etchemendy’s credit cards and employment checks from his wallet. Kills On Top, 793 P.2d at 1280. When petitioner’s brother and Etchemendy were fighting in the back seat of the vehicle, petitioner stopped the car because he “wanted in on some of this;” while Etchemendy screamed and pleaded with them to stop, petitioner and his brother continued beating him and kicked him while he was lying on the ground. Petitioner then attempted to choke the victim in the back seat of the car. Kills On Top, 793 P.2d at 1280. Petitioner later told Etchemendy to remove his clothes and helped place the nude victim into the trunk of the car. Kills On Top, 793 P.2d at 1280. Petitioner and his brother subsequently cashed one of Etchemendy’s checks and divided the money between them. Later, petitioner agreed with his brother on two occasions that they would have to kill and “get rid of’ Etchemendy. Kills On Top, 793 P.2d at 1281. While petitioner was not physically present when Etchemendy was murdered, he did nothing in the lengthy pre-murder stages of the episode to help the victim or prevent the homicide. Indeed, petitioner aided in leaving the area after the murder. Kills On Top, 793 P.2d at 1282. Petitioner did not inflict the final fatal blows, but the record established that the kick in the head which petitioner did *431 inflict on Etchemendy could have caused his death eventually even without further infliction of physical violence. Kills on Top, 793 P.2d at 1308.
A proper application of Tison to these facts and this record mandates two conclusions: First, petitioner was a major participant in the felony offenses — robbery and kidnaping — committed prior to the actual fatal blows which killed Etchemendy and upon which the State charged him with deliberate homicide by accountability under the so-called felony-murder rule. Second, petitioner’s acts demonstrated, at the very least, a reckless indifference to human life. These are precisely the conclusions we reached on this issue in petitioner’s direct appeal. They were correct then, and they remain correct today. The Court simply prefers to ignore the facts and the record concerning petitioner’s culpability in its determination to find “manifest error” regarding federal proportionality requirements in our earlier decision — all for the purpose of avoiding the res judicata effect of that decision.
Nor is the Court correct in stating that the present case more closely resembles Enmund than Tison. In Enmund, two persons committed robbery and then shot and killed their victims. Enmund, 458 U.S. at 784, 102 S.Ct. at 3369-70. Defendant Enmund was believed by law enforcement to have been waiting in a car outside the premises for the offenders to return and to have driven the “getaway car.” Enmund, 458 U.S. at 784, 102 S.Ct. at 3369-70. One of the primary offenders was tried with Enmund, and both were convicted of two counts of first-degree murder and one count of robbery; Enmund was sentenced to death for his role as an accomplice in the commission of an armed robbery which resulted in two deaths. Enmund, 458 U.S. at 784-85, 102 S.Ct. at 3369-70.
The United States Supreme Court granted Enmund’s petition for certiorari from the Florida Supreme Court’s affirmance of the death sentences in order to address the issue of whether death is a valid penalty under the Eighth Amendment for one who “aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed.” Enmund, 458 U.S. at 787, 797, 102 S.Ct. at 3371, 3376. The Supreme Court determined that Enmund “did not kill or attempt to kill; and, as construed by the Florida Supreme Court, the record before us does not warrant a finding that Enmund had any intention of participating in or facilitating a murder.” Enmund, 458 U.S. at 798, 102 S.Ct. at 3377. Indeed, *432 the “ ‘only evidence of the degree of [Enmund’s] participation is the jury’s likely inference that he was the person in the car by the side of the road near the scene of the crimes.’ ” Enmund, 458 U.S. at 786, 102 S.Ct. at 3370 (emphasis added). On the basis of this record, the Supreme Court reversed the imposition of the death penalty. Enmund, 458 U.S. at 801, 102 S.Ct. at 3378.
I will not reiterate the record before us in this case regarding petitioner’s actual involvement and participation in the extensive criminal episode which culminated in Etchemendy’s death. Nor will I present a detailed analysis of the extent to which that participation differed both qualitatively and quantitively from the record before the Supreme Court in Enmund. Suffice it to say that it is my view that the negligible degree of personal culpability present in Enmund bears no resemblance whatsoever to petitioner’s personal culpability in this case. The Court is clearly, and simply, wrong in concluding that the present case is more like Enmund than like Tison. It is equally, and as clearly, wrong in using its incorrect analysis as a means by which to conclude that our decision in the direct appeal of petitioner’s convictions and sentences was “manifest error” which allows us to revisit the proportionality issue already — and correctly— addressed there.
I also disagree with the Court’s decision to address petitioner’s proportionality argument under the Montana Constitution. The Court correctly notes that no proportionality issue under the Montana Constitution was raised or addressed in petitioner’s direct appeal. Under such a circumstance, the law is clear that we cannot address that claim in this postconviction proceeding.
Section 46-21-105(2), MCA, provides as follows:
When a petitioner has been afforded a direct appeal of the petitioner’s conviction, grounds for relief that could reasonably have been raised on direct appeal may not be raised in the original or amended petition.
In our recent opinion in petitioner’s brother’s postconviction proceeding, we overruled an earlier case to the extent it stood for the proposition that this Court can review issues in postconviction proceedings which could have been — but were not — raised on direct appeal. See Lester Kills On Top, 901 P.2d at 1386-87. We then applied the statutory procedural bar to each and every postconviction claim which could have been raised on direct appeal. See Lester Kills On Top, 901 P.2d at 1387-90.
*433 We must do the same here with regard to petitioner’s proportionality arguments under the Montana Constitution. These matters clearly could have been raised on direct appeal. Since they were not, we are obligated to apply the statutory procedural bar contained in § 46-21-105(2), MCA. The Court does not affirmatively address the statutory bar in any respect regarding the proportionality arguments petitioner raises under the Montana Constitution although, interestingly, it has no difficulty in affirming the District Court’s application of that bar to other of petitioner’s claims in issue five. While I concur in the Court’s opinion on issue five, I cannot agree with its totally inconsistent approach in not applying the § 46-21-105(2), MCA, procedural bar to the proportionality issue raised under the Montana Constitution.
Nor do I agree with the Court’s view that the Montana Constitution is not a separate “grounds for relief’ which could have been raised on direct appeal for purposes of applying the procedural bar contained in § 46-21-105(2), MCA. I note that we used “grounds for relief’ interchangeably with “issues,” “claims” and “arguments” in Lester Kills on Top, 901 P.2d at 1385-90. Moreover, it is clear, even from the Court’s opinion in this case, that the Montana Constitution is being used as a basis for relief separate and distinct from that available under the United States Constitution.
Moreover, the Court’s castigation of the dissent as putting a procedural bar ahead of human life is mere rhetoric which appeals to the emotions but ignores the law. The statutory procedural bar contained in § 46-21-105(2), MCA, was duly enacted by the Montana legislature and it is our clear and simple duty to apply that bar pursuant to its terms. We did so in Lester Kills on Top and we are obligated to do so here. The Court’s attitude only fuels the public’s perception that courts are unwilling under any circumstances to allow implementation of death sentences and are willing to ignore applicable law in order to impose their views.
Nor does — or can — the Court support its charge that the dissent construes the statutory procedural bar more narrowly than it was ever intended. Section 46-21-105(2), MCA, speaks for itself regarding the legislature’s intent. It was intended to do precisely what it should do in this case: preclude a petitioner for postconviction relief who has been afforded a direct appeal from raising thereafter — in the postconviction context — an issue which could have been raised on direct appeal but was not. While this Court may not agree with the legislature’s intention, we are obliged to apply it.
*434 It is relatively clear that the Court feels compelled to rely on a proportionality analysis under the Montana Constitution as specifically providing a separate ground for relief in order to avoid review by the United States Supreme Court of the EnmuncUTison rationale it sets forth under the United States Constitution. While I often join my brethren in avoiding such review by relying on “independent state grounds,” I cannot do so here where the only means of achieving that end is to breach the consistent application of the statutory procedural bar to which we so recently and strongly committed in Lester Kills on Top.
It is our role — unpopular as it often is with the public — to ensure that the State does not violate the rights of criminal defendants. It is not our role to ignore the law in order to provide those defendants with rights to which they are not entitled. It is my view that the Court has allowed its determination to limit the availability of the death penalty in Montana to override its obligation to apply the statutory procedural bar to petitioner’s contention that the Montana Constitution precludes imposition of the death penalty in this case. I cannot agree.
I dissent.
CHIEF JUSTICE TURNAGE joins in the foregoing concurring and dissenting opinion.